## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

WAYNE MURPHY,

                         :

       Petitioner,                        Case No. 1:11-cv-581

                         :          District Judge Sandra S. Beckwith

    -vs-                              Magistrate Judge Michael R. Merz

MICHAEL DEWINE, Attorney General
 Of Ohio

                         :

       Respondent.

---

## REPORT AND RECOMMENDATIONS

---

      This is a habeas corpus case brought *pro se* by Petitioner Wayne Murphy to obtain relief from his conviction in the Scioto County Common Pleas Court for aggravated robbery, felonious assault, and attempted murder.

      Murphy is currently serving a sentence in the Commonwealth of Kentucky. His Ohio sentence has been ordered to be served consecutively to his Kentucky sentence. He is thus sufficiently "in custody" on the Ohio sentence to ground habeas corpus jurisdiction at this time. Ohio does not contest the custody issue.

      Murphy pleads the following grounds for relief:

> **GROUND ONE:** Ineffective assistance of appellate counsel for refusing to raise the preserved issue of the five (5) year delay of charges & trial that prejudiced the defense when witnesses became deceased, witnesses not able to be located, DNA evidence was lost or withheld from defense that would all have supported defendant's Actual Innocence & implicated the TRUE suspect that Mr. Dixon is covering-up for by using me as the cover-up!

1

**GROUND TWO:** Trial Court Erred when it allowed the codefendant's statement & testimony to be introduced to the Jury when the Defendant did NOT testify at trial.

**GROUND THREE:** Trial Court erred when ordered the Defendant to be shackled during trial.

**GROUND FOUR:** Trial court was in error when it allowed defendant's prior conviction to be introduced at trial, when Kentucky crime occurred nine (9) days after the Ohio crime occurred. Ohio crime occurred on July 5, 2004, the Kentucky crime occurred on July 14, 2004. The Kentucky crime should not have been introduced as prior bad acts.

**GROUND FIVE:** Trial Court erred & abused their discretion when it denied the defendant to receive separate trials from the codefendant.

(Corrected Petition, Doc. No. 15.)

## Procedural History

On November 5, 2008, a Scioto County grand jury indicted Murphy for aggravated robbery, felonious assault, attempted murder, and conspiracy to commit aggravated robbery with William Dixon, all on July 5, 2004 (Indictment, Return of Writ, Doc. No. 18, PageID 1435-1437). On the State's motion, Murphy and Dixon's cases were consolidated for trial which was granted. *Id.* at PageID 1440-1442. Murphy moved to dismiss for pre-indictment delay, but the motion was denied. Murphy and Dixon were tried jointly and Murphy was convicted of aggravated robbery, felonious assault, and attempted murder. *Id.* at PageID 1488-1490. Judge Marshall then sentenced Murphy to twenty-eight years confinement, consecutive to his Kentucky sentence (Judgment Entry, Return of Writ, Doc. No. 18, PageID 1491-1494).

2

Murphy appealed raising six assignments of error:

1. The trial court erred when it ordered that the defendant remain in shackles during the jury trial.

2. The trial court erred by permitting a summary of a statement of a codefendant to be used against the defendant while restricting cross examination of a State's witness.

3. The trial court erred by permitting evidence of the defendant's prior convictions to be admitted against the defendant when such convictions were unrelated to the current charges.

4. The trial court erred by denying the defendant's motion for separate trials.

5. The trial court erred by denying the defendant's motion for a mistrial.

6. The trial court erred by sentencing defendant consecutively for allied offenses of similar import.

(Appellant's Brief, Return of Writ, Doc. No. 18, Ex. 17, PageID 1501-1533.)   The Scioto County Court of Appeals overruled the first five assignments of error, but sustained the sixth.   *Ohio v. Murphy*, 2010 Ohio 5031, 2010 Ohio App. LEXIS 4240 (Ohio App. 4th Dist. Sept. 22, 2010)(copy at Return of Writ, Doc. No. 18, PageID 1564-1597).   Murphy filed a *pro se* appeal to the Ohio Supreme Court pleading the following propositions of law:

1. Ineffective assistance of appellate counsel for not raising the issue of the trial court's five-year time delay that affected the due process of a fair trial and the right to a complete defense. This issue was preserved by trial attorney.

2. The appellate court erred in the denial of the raised issue of appellant being shackled before the jury.

3.  The appellate court erred in the denial of the raised issue of the trial court allowing a summary of the co-defendant's statement to be used against appellant during his decision not to testify.

    4. The appellate court erred in the denial of the raised issue of permitting evidence of the appellant's prior conviction in Kentucky to be admitted against appellant when such convictions were totally unrelated to the current charges in this proceeding.

    5. The appellate court erred in the denial of the raised issue of denying appellant's motion for separate trials from the codefendant.

(Memorandum in Support of Jurisdiction, Return of Writ, Doc. No. 18, PageID 1600-1617.)   The

Ohio Supreme Court declined to exercise jurisdiction over the appeal (Entry, Return of Writ, Doc.

No. 18, PageID 1689).

    On December 20, 2010, Murphy filed an Application for Reopening under Ohio R. App. P.

26(B) claiming ineffective assistance of appellate counsel in his appellate attorney's failure to

raise the pre-indictment delay issue (Return of Writ, Doc. No. 18, PageID 1696-1729).   The Court

of Appeals denied the Application.  *State v. Murphy*, Case No. 09CA3311 (Ohio App. 4th Dist.

2011)(unreported, copy at Return of Writ, Doc. No. 18, PageID 1730-1734).   Murphy did not

appeal to the Ohio Supreme Court, but filed the instant habeas corpus petition.


**Analysis**

**Ground One:   Ineffective Assistance of Appellate Counsel**


    In his First Ground for Relief, Petitioner claims he was denied effective assistance of

appellate counsel when his attorney on direct appeal did not raise the claim of pre-indictment

delay.

    Respondent asserts that Murphy procedurally defaulted on this claim when he failed to

appeal to the Ohio Supreme Court from denial of his Application to Reopen (Return of Writ, Doc.

No. 18, PageID 1396-1399).   Murphy admits that he did not file such an appeal, but offers as

excusing cause the failure of the Clerk of the Court of Appeals to send him a copy (Response [reply] to Answer, Doc. No. 13).   He has attached apparently authentic documentation from the mail room at his current place of incarceration to show the truth of this claim.   That proof adequately excuses the procedural default and this Court must decide this question on the merits.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.   28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The Fourth District Court of Appeals in fact decided this claim on the merits when it dismissed Petitioner's Application to Reopen.   It held as follows:

> ¶ **5** The standard used in reviewing an ineffective assistance of appellate counsel claim is the same standard used when considering such a claim made concerning trial counsel. See, e.g., *State v. Nickelson,* 75 Ohio St.3d 10, 11, 1996-Ohio-5, 661 N.E.2d 168; *State v. Reed,* 74 Ohio St.3d 534, 535, 1996-0hio-21, 660 N.E.2d 456. Under this standard, a reviewing court will not reverse a conviction unless the applicant can show both a deficient performance and resulting prejudice. *Strickland v. Washington* (1984),466 U.S. 668, 687,104 S.Ct. 2052. To establish prejudice, the applicant must show that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the appeal would have been different. See *Strickland* at 687-688. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. Id. at 694. The failure to make such a showing precludes an appellant from prevailing on his application. See *State v. McGlone* (1992).83 Ohio App.3d 899, 903, 615 N.E.2d 1139.
>
> II. Pre-Indictment Delay
>
> ¶ **6** Murphy argues that he received ineffective assistance of appellate counsel because his attorney failed to appeal the trial

court's denial of his motion to dismiss for pre-indictment delay. He claims that during the state's four-year wait to indict him, exculpatory witnesses became unavailable or their memories faded and the state lost possibly exculpatory DNA evidence.2

Note 2  Although Murphy refers to several cases involving post-accusation speedy trial rights, we limit our decision to the due process concerns surrounding pre-indictment delay.

¶ **7** A delay in prosecuting an individual may violate due process of law under Section 16. Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. *State v. Luck* (1984). 15 Ohio St.3d 150,472 N.E.2d 1097. at paragraph two of the syllabus.; see, also. *United States v. Lovasco* (1977), 431 U.S. 783. 789, 97 S.Ct. 2044; *State v. Meeker* (1971).26 Ohio St.2d 9, 268 N.E.2d 589, at paragraph one of the syllabus, overruled on other grounds by *Luck,* supra.

¶ 8 In *Lovasco,* the United States Supreme Court set out a two-part test to establish a violation of due process rights related to a delay in prosecution. The defendant first must establish that the delay has caused him actual prejudice. *State v. Flickinger,* Athens App. No. 98CA09, 1999 WL 34854, at *3, citing *Lovasco* at 789-790; *Marion* at 324; *Luck* at 153-154. Second. the defendant must establish that the state's reason for delaying   prosecution was "unjustifiable." *Flickinger* at "4.

A. Evidence in the Record of "Actual Prejudice"

¶ **9** Murphy alleges in his application that he suffered actual prejudice because of the delay when: (1) two of his alibi witnesses died or became unavailable; (2) multiple exculpatory witnesses could not be located; (3) witnesses memories faded; and (4) DNA evidence was lost.

¶ **10** At a pretrial hearing to address several pending motions, trial counsel for Murphy and Dixon orally argued a motion to dismiss on the grounds of pre-indictment delay. They asserted that Murphy's girlfriend, who died before the Ohio trial, might have provided exculpatory evidence for Dixon, and, because she was Murphy's girlfriend at the time of the crimes and was allegedly with him that day, would have served as an alibi witness. Murphy's trial counsel also stated that an alleged eyewitness to the Ohio robbery told him that she no longer remembered the five-year old incident. Counsel also asserted that two other individuals were alleged to have "first hand knowledge" of the actual individual who committed the crime but that because of

6

the delay, counsel had been unable to locate either individual or discover the identity of the other alleged perpetrator.

¶ **11** Despite making these arguments at the hearing, Murphy did not introduce anything- testimony, affidavits, etc. - to support his position that he suffered prejudice from the pre-indictment delay. See *State v. Green,* 81 Ohio St.3d 100, 104, 1998-0hio-454 (statements of counsel are not evidence). There also is nothing in the trial court record referencing the possibly exculpatory DNA evidence that Murphy claims the state lost. Essentially, Murphy is asking this court to exceed the scope of appellate review by referencing matters outside the record. *State v. Ishmail* (1978), 54 Ohio St.2d 402, paragraph one of the syllabus (appellate review on direct appeal is strictly limited to matters in the record). However, because Murphy's claims rely upon evidence outside the record, raising them in a direct appeal would have been futile. Rather, a petition for postconviction relief would have been the appropriate way to raise these issues. See *State v. Gholston,* Hamilton App. No. C-020557, 2003-0hio-2758, at 117.3 Thus, we conclude that appellate counsel's failure to challenge the trial court's denial of the motion to dismiss did not fall below an objective standard of reasonableness.

¶ 12 Murphy's appellate counsel could not be deficient in failing to assign the denial of his motion to dismiss as error in a direct appeal. *State v. Moore,* 93 Ohio St.3d 649,650, 2001-Ohio-1892 ("the effectiveness of appellate counsel [cannot] be judged by adding new matter to the record and then arguing that counsel should have raised these new issues revealed by this newly added material."). See, also, *State v. O'Neal,* Cuyahoga App. No. 83393, 2005-0hio-3568, at n6-7. Murphy therefore has failed to establish a colorable claim of ineffective assistance of appellate counsel, and his application to reopen is **DENIED.**

*State v. Murphy*, Case No. 09CA3311 (Ohio App. 4th Dist. 2011)(unreported, copy at Return of

Writ, Doc. No. 18, PageID 1731-1734).

In his Response to the Answer, Petitioner argues that the State of Ohio had no good reason

to delay indicting him and in fact offers proof that Ohio did not seek to obtain him from Kentucky

during the time of his pretrial confinement in Kentucky (Response to Answer, Doc. No. 13,

Exhibit D, Letter from Commonwealth's Attorney).  This misses the point of the Court of

Appeals' ruling.  They found appellate counsel was not ineffective because no record had been

7

made of the evidence of prejudice on which Murphy relied in his Application.  Because the appellate attorney was limited to what was in the record, he could not have argued on the basis of evidence Murphy gathered later but which his trial attorney did not introduce.   For that matter, the appellate attorney could also not have relied on the letter from the Commonwealth's Attorney that is Exhibit D to Doc. No. 13 – it was not in the record, indeed it did not exist, at the time of direct appeal.

In Ohio if a criminal defendant has evidence which he believes should have been presented at trial but was not, his remedy to introduce that evidence is by way of a petition for post-conviction relief under Ohio R. Code § 2953.21 claiming ineffective assistance of trial counsel and producing the evidence.   That was not done here.  If the trial attorney had (or had access to) the evidence of prejudice on which Murphy relied in his Application for Reopening, he should have presented it to the trial court.  Had he done so, then the issue would have been preserved for direct appeal and it might have been, depending on the strength of the evidence, ineffective assistance of appellate counsel not to make the argument.   But because the evidence was not in the record on direct appeal, the decision of the Court of Appeals that it was not ineffective assistance of appellate counsel to fail to make this claim is neither contrary to nor an objectively unreasonable application of the governing Supreme Court law, *Strickland v. Washington, supra.*   The First Ground for Relief should be dismissed with prejudice.


**Ground Two:   Allowing Co-defendant's Statement to be Read to the Jury**


In his Second Ground for Relief, Murphy complains of the fact that Detective Jodi Conkel

8

was permitted to read a statement of co-defendant William Dixon to the jury.   Respondent raises

no procedural defenses to this claim and the Court thus reaches the merits.

On direct appeal, counsel phrased this claim as follows:   "The trial court erred by

permitting a summary of a statement of a codefendant to be used against the defendant while

restricting cross examination of a State's witness."   The Court of Appeals decided the claim on

the merits on direct appeal

### C. Limitation on Cross-Examination of Co-Defendant Statement

¶ 65 Murphy also asserts that the failure to sever his trial from Dixon's prejudiced him because he was limited on cross-examination of a redacted summary of a statement Dixon made to Detective Conkel. The summary Conkel read at trial stated:

> William stated to me that he had been using cocaine for about a month before this event on July 5th, 2004. He went in his red Honda to the home of Tracey Chaffins' parents. He then went to the Furnace *** and headed towards Blanton and Graph [sic].[2] He knew that Jade went to the hospital and that Waddell would be at the store by himself. He was going to the store to rob it to get drug money.
>
> He left Tracey Chaffins' parents['] house, stopped along the road and smoked a joint. He pulled the car to the left side of Blanton and Graphs Grocery and waited for someone. He went in and played lottery tickets for about one hour. Art waited on him. He had been in the grocery many times and knew Art by sight. He went out and played the lottery tickets in his car and got a little higher on cocaine. He went back in and cashed the lottery tickets in. It was definitely around noon. He knew there was going to be a robbery.
>
> The cash register was taken from the grocery. He stated that there were hammers in the car. Afterwards he went and got some beer and drugs. He said there was $ 1,400.00 taken from the store. He knew that a robbery was going to take place and he

9

would get something out of it. He said he didn't think anyone would get hurt. Afterward he said he drove back to Tracey's parents' house.

William stated that he drove his car and that he was present during the robbery of Blanton and Graph Grocery. He stated that his car was used in both robberies; Blanton and Graphs Grocery and the video store in Russell, Kentucky.

## FOOTNOTES

2 The star ellipsis denote a portion of Conkel's testimony not from the redacted summary. She explained what was meant by "the Furnace," i.e., Franklin Furnace.

¶ 66 Murphy concedes that he did not face a *Bruton*/Confrontation Clause issue when Conkel read this summary into the record because Dixon later took the stand and provided him with an opportunity to cross-examine on the statement. See *Bruton v. United States* (1968), 391 U.S. 123, 132, 88 S.Ct. 1620, 20 L. Ed. 2d 476. However, Murphy argues that the redacted summary implicated him and he was unable to cross-examine Detective Conkel regarding the full statement and was restricted in his cross-examination concerning the redacted summary.

[*P67] Our review of the record reveals that Murphy's counsel began his cross-examination of Detective Conkel by asking her if she felt the redacted summary was an accurate reflection of the full statement made by Dixon. Conkel said it was not. The prosecutor then asked for a bench conference where the prosecutor informed the Court that if Murphy's attorney continued on this line of questioning, it would open the door to questions concerning Murphy's participation in the crime. In other words, on re-direct the State would say "Detective Conkel, why is this not an accurate representation of the statement Dixon gave?" to which she would explain that it was redacted to omit references to Murphy. Thus, the reason that Murphy was restricted in his cross-examination of the statement was to prevent him from opening the door to a line of questions from the State that would have clearly implicated Murphy in the statement.

> [*P68] But Murphy also proposes that the "vague" references to
> "he" throughout the statement caused the jurors great suspicion as to
> who "he" was. We do not share a similar impression when
> reviewing the statement. The statement begins with "William
> [Dixon] told me" and then refers to a "he" through the remainder of
> the statement. The statement makes sense if one were to replace
> "he" with "Dixon" throughout. Given the evidence in the case, none
> of the instances of "he" would require jurors to assume that "he" was
> actually referring to Murphy. Accordingly, we do not view the
> redacted summary as unfairly implicating Murphy. This argument is
> meritless.

*Ohio v. Murphy*, 2010 Ohio 5031, 2010 Ohio App. LEXIS 4240 (Ohio App. 4th Dist. Sept. 22,

2010). While his appellate counsel conceded (correctly) that there was no *Bruton* problem with

the way the trial court handled this issue, Murphy attempts to back away from that concession by

arguing this claim almost entirely in terms of a *Bruton* issue (Response to Answer, Doc. No. 19,

PageID 1796-1805.) The limitation the trial judge put on cross-examination was intended and

had the effect of preventing invited error by allowing Detective Conkel to respond to the question

of why the statement was not a completely accurate representation of what Dixon said by testifying

that Dixon had implicated Murphy. The statement was now allowed to go un-cross-examined

because Dixon did in fact take the stand. The fact that he claimed he could not remember making

the statement does not make the cross-examination incomplete under the Confrontation Clause: a

defendant may ask the questions in confronting a witness, but is not guaranteed by the Constitution

that he will get the answers he wants.

The question of whether the redacted statement implicated Murphy is a question of the

interpretation of the text, a question of fact. The Court of Appeals found, in the segment quoted

above, that the redaction adequately cloaked Murphy's identity. Murphy has not shown by clear

and convincing evidence that this finding is erroneous, given the evidence presented. Nor has he

shown that the legal analysis by the Court of Appeals was contrary to or an unreasonable application of Supreme Court precedent.   Ground Two should be dismissed with prejudice.

### Ground Three:   Shackling During Trial

In his Third Ground for Relief, Murphy claims the trial court committed prejudicial error when it ordered him shackled during trial.   This claim was raised as the first assignment of error on direct appeal and the court of appeals decided it as follows:

> ¶ 42 In his first assignment of error, Murphy argues that the trial court violated his due process rights when it ordered him to be placed in restraints during his trial. However, Murphy failed to object to the use of restraints. At the security hearing, the prosecutor argued that both defendants should be shackled. Dixon's attorney offered an argument contra but Murphy's attorney stated "we don't wish to be heard at this time on this issue, your Honor." We were unable to locate on the record any further objections to restraints by Murphy. Consequently, Murphy must demonstrate plain error or he has waived this issue.

> ¶ 41"Plain error" exists only when it is clear the verdict would have been otherwise but for the error. *State v. Sanders*, 92 Ohio St.3d 245, 263, 2001 Ohio 189, 750 N.E.2d 90. Plain error review places three limitations on a reviewing court's decision to correct an error not objected to during trial. First, there must be legal error. Second, the error must be "plain." Within the meaning of Crim.R. 52(B), an error is "plain" if there is an "obvious" defect in the trial proceedings. Third, the error has to affect "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002 Ohio 68, 759 N.E.2d 1240. The Supreme Court of Ohio has "interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. The Court further explained "[e]ven if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to

notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.

¶ 42 Murphy contends that the trial court erred by ordering him to wear restraints at trial because there was no evidence that he posed any risk of violence or escape. Additionally, because he remained seated when in the jury's view and the jury only actually saw Dixon in restraints, Murphy argues that the court contributed to its own error by announcing to the jury that he and Dixon were shackled.

¶ 43 We begin with the general rule that restraints tend to erode the presumption of innocence that cloaks a defendant at his trial. *State v. Hairston*, Scioto App. No. 06CA3089, 2007 Ohio 3707, at P28. Although the defendant generally should be allowed to appear at his trial "unfettered," see *State v. Carter* (1977), 53 Ohio App.2d 125, 131-132, 372 N.E.2d 622, this is not an absolute right. It is "widely accepted that a prisoner may be shackled where there is danger of violence or escape." *State v. Fields*, Scioto App. No. 06CA3080, 2007 Ohio 4191, at P26, quoting *State v. Franklin*, 97 Ohio St.3d 1, 2002 Ohio 5304, 776 N.E.2d 26, at P79. Ultimately, the decision to require a defendant to wear restraints rests in a trial court's sound discretion. *Hairston* at P30.

¶ 44 For effective appellate review of the court's discretion, the trial court should hold a hearing on the need for restraints or otherwise enter on the record the factors relied upon in its decision to restrain the defendant. *Carter* at 132. Even without a hearing, an appellate court will not disturb the trial court's exercise of its discretion to impose restraints if the record demonstrates "a compelling need to impose exceptional security procedures." *Franklin* at P82.

¶ 45 In exercising its discretion the trial court should not merely defer to the recommendation of security personnel. *State v. Curry* (Sept. 30, 1997), Scioto App. No. 95CA2339, 1997 Ohio App. LEXIS 4495, 1997 WL 600056, at *11, citing *Carter* at 131. The court must balance the rights of the defendant with the "competing interests of other courtroom participants and society in general," while keeping in mind that restraints are an extreme measure. *Carter* at 132, quoting *United States v. Theriault* (C.A. 5, 1976), 531 F.2d 281, 284.

¶ 46 Certain factors tend to mitigate the prejudice that is presumed to arise when a defendant is restrained at trial. First, prejudice may

be lessened if a court takes measures to ensure that jurors are unaware of a defendant's shackles. The court might employ "modesty" panels that hide the defendant's legs or arms from view and seat the defendant before the jurors enter the courtroom. *Hairston* at PP27-28. And if the jury becomes aware that a defendant is restrained, a court may also reduce prejudice by cautioning the jurors that they cannot consider the restraints as an indication of guilt for the crime being tried. *Fields* at P34.

¶ 47 The trial court held the security hearing at the conclusion of the pre-trial hearing on defense motions. Earlier in the hearing the court ruled in favor of the State on admitting evidence of "other acts," i.e., the robbery and rape in Kentucky. At this hearing the court heard detailed testimony about the robbery and rape committed by the co-defendants in Kentucky. The court concluded that Murphy and Dixon should remain in shackles in light of the fact the jurors would know that the men were incarcerated in Kentucky and because of "the nature of this crime and the nature of the crimes they've already been convicted of."

¶ 48 The trial court may have felt the sadistic and violent nature of Murphy's actions in Kentucky required precautions in order to assure the safety of jurors, attorneys, staff, and others in attendance. This is understandable and we recognize that a trial court need not wait for a defendant to act out before employing restraints. *Franklin* at P79, citing *Loux v. United States* (C.A.9, 1968), 389 F.2d 911, 919-920. But the fact that Murphy was convicted of violent crimes and serving a life sentence in Kentucky, alone, was not sufficient to merit shackling. See *Carter* at fn. 2. In light of other security measures available, the evidence relied upon by the court here does not demonstrate the "unusual circumstances" or "compelling need" typically associated with restraining a defendant during his own trial. See *State v. Kidder* (1987), 32 Ohio St.3d 279, 285, 513 N.E.2d 311; *State v. Evans*, Scioto App. No. 05CA3002, 2006 Ohio 2564, at P39. The State presented no evidence indicating that Murphy had acted out violently in a courtroom in the past, had made any threats to act violently at the trial, or had otherwise alarmed court security personnel.   Accordingly, we hold that it was error to order Murphy restrained at trial. But for the following reasons the error here does not rise to the level of "plain error."

¶ 49 The record indicates that the trial court took steps to lessen any prejudice stemming from placing Murphy in restraints. Murphy remained seated throughout the trial and his legs and arms were

shielded from the jurors' view with the use of "modesty panels." Murphy admits that no juror observed him in restraints.

¶ 50 But when Dixon took the stand, the attorneys and court realized that the jurors would see Dixon's handcuffs if he held the witness microphone. The court and attorneys considered excusing the jury, apparently so that Dixon could position the microphone so that the jurors would not see his restraints. But the court remarked that the jurors would still be able to look over from the jury box and see Dixon's restraints. Then the following discussion took place:

THE COURT: I think we ought to just give a cautionary instruction.

[DIXON'S ATTORNEY]: I think a cautionary instruction in this case would be fine.

THE COURT: They already know that they're incarcerated in Kentucky.

[DIXON'S ATTORNEY]: Yeah.

[MURPHY'S ATTORNEY]: Yeah.

PROSECUTOR:  Yeah.

¶ 51 The trial court then admonished the jury:

¶ 52 "All right. Ladies and Gentlemen of the jury, because of the nature of the charges and because you know, they've been convicted in Kentucky and they're serving a prison term I ordered that they be handcuffed and shackled. And I don't like the jurors to see a person like that because in no way do I want you to hold that against him, the fact that I as a judge made a determination for your safety, everybody's safety in the courtroom, as well as the Defendant's safety that he would be handcuffed and shackled and remain that way during the trial. Now, the fact that he is handcuffed and shackled, you cannot use that for any reason whatsoever to connect that with this case. Okay? He's serving a prison term in Kentucky. All right?"

¶ 53 Thus, Murphy's attorney approved the court's decision to give a cautionary instruction to the jury, alerting them that he was shackled. We approved a similar cautionary instruction in *Fields* at P34. Moreover, if a jury is already aware that the defendant is an inmate serving time on a different crime any prejudice that results

15

> from viewing him in shackles is reduced. See *State v. Garrett*, *Richland App. No. 03-CA-49, 2004 Ohio 2231, at P41*. Finally, the State presented considerable evidence implicating Murphy in the B+G robbery. Given that our standard of review is plain error, we are unable to say that "but for" the jury's awareness of Murphy's restraints he would have been acquitted or that a manifest miscarriage of justice occurred.

*Ohio v. Murphy*, 2010 Ohio 5031, 2010 Ohio App. LEXIS 4240 (Ohio App. 4th Dist. Sept. 22, 2010).

The State of Ohio asserts this claim is barred by Murphy's procedural default in presenting the claim in the state courts (Return of Writ, Doc. No. 18, PageID 1399).   Murphy presents no argument on this point but "relies on his original submitted argument on this Ground and chooses not to further present any arguments."   (Response to Answer, Doc. No. 19, PageID 1806).   No argument on this Ground was present with the Petition.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000).   That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977);   *Engle v. Isaac*, 456 U.S. 107, 110 (1982).   Absent cause and prejudice, a federal habeas

16

petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,*785 F.2d at 138.

Ohio has the same contemporaneous objection rule followed in most States and in the federal courts, that parties must preserve errors for appeal by calling them to the attention of the

17

trial court at a time when the error could have been avoided or corrected. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998).

A state appellate court's review for plain error, which is what the court of appeals did in this case, is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

States have a very strong interest in the contemporaneous objection rule. *Scott v. Mitchell,* 209 F.3d 854 (6th Cir. 2000), quoting extensively from *Wainwright v. Sykes*, 433 U.S. 72 (1977). Ohio's contemporaneous objection rule is an adequate and independent state ground. *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001);*Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).

Because Murphy procedurally defaulted his shackling claim by not making a contemporaneous objection, Ground three should be dismissed with prejudice.

### Ground Four:    Admission of Prior Conviction

In his Fourth Ground for Relief, Murphy complains of the admission in evidence of his Kentucky conviction because although it was a conviction prior to his trial in this case, it was for crimes committed nine days after the Ohio crimes involved in this case.

18

The Court of Appeals described the evidence of the Kentucky crimes as follows:

[*P21] Melissa Ruffing testified that she was the sole employee working at the Kentucky video store on July 14, 2004. Murphy entered the store when there were no other customers inside, walked the entire length of the store and "cased it," apparently looking for security cameras. He then went into an employees-only storage room.

[*P22] Ruffing was afraid to confront Murphy while she was alone in the store. But when two women entered the store, she went to the storage room and told Murphy he could not be in there. He cursed her and brushed past her, going back out to the video aisles. He finished walking around the store, looked up to the ceiling, and then left.

[*P23] Shortly afterwards Dixon walked in ostensibly to rent a video. Dixon selected a video but did not have a membership with the store so Ruffing helped him apply for one. He gave Ruffing his identification card and she helped him fill out a membership form. Ruffing informed him that the store had a special deal and he was entitled to rent a second video for free. Dixon told her that he would go ask his friend to help him pick out the second video. Ruffing told Dixon that she would be cleaning in one of the video aisles and pointed out where she would be when he was ready to check out the second video.

[*P24] As Ruffing was down on her hands and knees cleaning shelves, she heard two people whispering. She looked underneath her arm and saw a pair of boots. She was then hit in the head with a hammer. Murphy grabbed her, turned her over, grabbed one foot, and ordered Dixon to hold the other. The two men dragged her back to the video store office where Murphy ordered Dixon to get the cash register. Dixon then left the office. When Murphy demanded that Ruffing open the safe, she told him there was no money it. Murphy began to hit her with his fists, knocking her down repeatedly. Ruffing was wearing a ring and Murphy commented that "Tracy" would like it. Ruffing removed the ring, threw it down and ran out of the office into the middle of the store. There she observed a woman standing outside, near the door. But when Ruffing screamed for help, the woman turned away. Ruffing later identified the woman as Tracy Chaffins.

[*P25] Before she could escape, she was dragged back to the office.

> Murphy then raped her inside the office. After the rape Murphy hit her in the head with a hammer and knocked her unconscious.

*Ohio v. Murphy*, 2010 Ohio 5031, 2010 Ohio App. LEXIS 4240 (Ohio App. 4th Dist. Sept. 22, 2010).  This claim was Murphy's third assignment of error on direct appeal and the Court of Appeals decided it as follows:

> [*P70] Murphy argues in his third assignment of error that the trial court erred by admitting evidence of the rape that occurred during the Kentucky robbery. Murphy concedes that some elements between the B+G robbery and the Kentucky robbery were similar and were admissible to prove identity. But Murphy argues that evidence of the rape was inflammatory and prejudicial. The State does not directly respond to Murphy's argument that evidence of the rape was inflammatory, but rather concentrates on the admissibility of the Kentucky robbery under Evid.R. 404(B) to prove Murphy's identity as the perpetrator of the B+G robbery.
>
> [*P71] The admission of evidence is within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 Ohio B. 375, 510 N.E.2d 343, at paragraph two of the syllabus. See discussion of abuse of discretion standard, supra, Section IV.A.
>
> [*P72] Evidence of other acts is not admissible for the purpose of proving the accused acted in conformity with that character on a particular occasion. *State v. Treesh*, 90 Ohio St.3d 460, 482, 2001 Ohio 4, 739 N.E.2d 749. Evid.R. 404. However, Evid.R. 404(B) provides other acts evidence may be admissible when it is offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> [*P73] Additionally, R.C. 2945.59 provides that:
>
>> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous

with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

[*P74] R.C. 2945.59 is to be strictly construed against the State, and to be conservatively applied by a trial court. *State v. DeMarco (1987), 31 Ohio St.3d 191, 194, 31 Ohio B. 390, 509 N.E.2d 1256.*

[*P75] Thus, evidence of other acts may be admissible if the evidence is offered for a purpose other than to show the accused's propensity to act in conformity with the accused's character, e.g., to commit a certain type of crime. *State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180*, at the syllabus. For prior acts evidence to be admissible, the evidence must be relevant to proving the guilt of the offense in question. *State v. Gardner (1979), 59 Ohio St.2d 14, 20, 391 N.E.2d 337*. See, also, *State v. Henderson (1991), 76 Ohio App.3d 290, 294, 601 N.E.2d 596*. There must be substantial evidence that the accused committed the act. See *State v. Carter (1971), 26 Ohio St.2d 79, 269 N.E.2d 115*, at paragraph two of the syllabus. In addition, the prior act must not be too remote and must be closely related in time and nature to the offense charged. *State v. Burson (1974), 38 Ohio St.2d 157, 159, 311 N.E.2d 526.* If the act is too distant in time or too removed in method or type, it has no permissible value. *Henderson at 294.*

[*P76] Both Murphy and the State agree that the many similarities between the Kentucky robbery and the B+G robbery were admissible for the purpose of demonstrating identity. Among other similarities, evidence was introduced that (1) two men were involved in both robberies; (2) one person "cased" the place of business prior to the robbery; (3) a hammer or hammers were used to assault the victim; (4) the victim was attacked from behind; (5) the robberies took place at or around the noon hour; (6) the perpetrators dragged the victim from the initial point of attack to another part of the store where the money was located, which left a trail of blood; (7) a personal item was taken from the victim in both robberies; and (8) Tracy Chaffins was seen at both robberies.

[*P77] Thus, due to the numerous similarities between the crimes and Waddell's inability to say who attacked him, this evidence was relevant to establishing a relevant and material issue in the B+G robberies: identification of the perpetrators. Cf. *State v. Curry (1975), 43 Ohio St.2d 66, 73, 330 N.E.2d 720.* This evidence was ultimately instrumental in the State's effort to prove Murphy's guilt

because Waddell was unable to identify Murphy as his attacker, although he had seen him in the store previously. The striking similarities between the B+G robbery and the Kentucky robbery were properly introduced to resolve any doubt the jury had about Murphy's participation in the crime.

[*P78] But Murphy contends that the State should not have been allowed to introduce evidence that he raped Ruffing in the course of the Kentucky robbery because it bared no similarity to the B+G robbery and was prejudicial. As with all evidence, other acts evidence is subject to the relevancy and fairness requirements of Evid.R. 403(A) and must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Soke* (1995), 105 Ohio App.3d 226, 249, 663 N.E.2d 986; *State v. Matthews* (1984), 14 Ohio App.3d 440, 442, 14 Ohio B. 559, 471 N.E.2d 849.

[*P79] The State was allowed to ask Ruffing if she was raped, a fact that she confirmed. We agree with Murphy that evidence concerning the rape was not probative of his identity under Evid.R. 404(B). No sexual assault was alleged to have occurred in the B+G robbery and thus the evidence did not prove identity. We further agree that admission of the rape was inadmissible under Evid.R. 403(A) because its probative value was substantially outweighed by the danger of unfair prejudice. Accordingly, the trial court erred by admitting it. Nonetheless, we perceive this error as harmless.

[*P80] We apply non-constitutional harmless-error analysis to evidentiary errors such as this. *State v. Elliott* (Feb. 27, 1995), Highland App. No. 94CA836, 1995 Ohio App. LEXIS 785, 1995 WL 89732, at *3 (applying non-constitutional harmless-error analysis to admission of irrelevant evidence). See, also, *State v. McKnight*, 107 Ohio St.3d 101, 2005 Ohio 6046, 837 N.E.2d 315, at P88 (applying non-constitutional harmless-error analysis to erroneous admission of other acts evidence); *State v. Conway*, 109 Ohio St.3d 412, 2006 Ohio 2815, 848 N.E.2d 810, at P74 (same). A non-constitutional error is harmless when there is substantial other evidence to support the guilty verdict. *State v. Webb*, 70 Ohio St.3d 325, 335, 1994 Ohio 425, 638 N.E.2d 1023. For the following reasons, we conclude that the erroneous admission of Ruffing's testimony concerning the rape was harmless.

[*P81] First, as previously noted, the State presented a substantial amount of admissible evidence of Murphy's guilt. Second, Ruffing described the details of the vicious assault perpetrated on her by

Murphy and Dixon. Jurors were also shown bloody photographs of crimes scene at both the B+G robbery and the Kentucky robbery. Thus, jurors were already exposed to evidence of other repulsive conduct. Given the sadistic nature of the crimes for which he was being tried, we seriously doubt that evidence of the rape added much in terms of "aggravating" the jurors. Third, at the close of evidence the court properly instructed jurors that they could consider evidence about other crimes only for a limited purpose and not to prove the character of the defendants. "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, at paragraph four of the syllabus. Thus, we conclude that the error here was harmless and overrule this assignment of error.

*Ohio v. Murphy, supra.*

Murphy conceded on direct appeal as he does here that the details of the two robberies were sufficiently similar that the Kentucky robbery could be admitted to show identity.  His claim is that the rape was completely extraneous to the details that made the robbery admissible.  The Court of Appeals agreed with him that it was error to elicit the testimony about the rape, but found the error to be harmless.

Murphy asserts that the Court of Appeals harmless error analysis is an "unreasonable application of Fed. Rule [of Evidence] 404(b) of prior bad acts admissibility."  (Response, Doc. No. 13, PageID 1343.)  However, the test in Fed. R. Evid. 404 is not the test to be applied. Rather, the question is whether the appeals court ruling is contrary to or an unreasonable application of clearly established United States Supreme Court precedent.  28 U.S.C. § 2254(d)(1).

Respondent argues that the decision is not contrary to nor an unreasonable application of clearly established Supreme Court precedent because the Supreme Court has never explicitly addressed the constitutionality of admitting other acts evidence.  (Return of Writ, Doc. No. 18,

PageID 1406, *citing Bugh v. Mitchell,* 329 F.3d 496 (6th Cir. 2003)).   Murphy cites no law to the contrary.   *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999), was reviewing a state court decision from before the AEDPA was enacted and dealt, in any event, with prosecutorial misconduct, not actual admission of evidence of other crimes.

Because Petitioner has not shown that the state court's decision on this claim was contrary to or an unreasonable application of clearly established Supreme Court precedent, Ground Four should be dismissed with prejudice.


### Ground Five:   Denial of Separate Trials


In his Fifth Ground for Relief, Murphy claims the trial court abused its discretion when it denied him a separate trial from his co-defendant, William Dixon.   This claim was presented as the fourth assignment of error on direct appeal; the Court of Appeals decided it as follows:

> [*P54] In his fourth assignment of error, Murphy argues that the court erred by denying his motion for separate trials. In his second assignment of error, Murphy contends that the court erred by permitting Detective Conkel to read a redacted summary of Dixon's statement which implicated Murphy in the crime. Murphy also argues the use of a redacted summary limited his ability to cross-examine Detective Conkel about Dixon's confession. Finally, in a portion of his fifth assignment of error, Murphy argues that Dixon's attorney improperly commented on his Fifth Amendment right to remain silent. Together, these arguments present issues concerning whether Murphy received a fair consolidated trial and we address them together.
>
> A. Standard of Review
>
> [*P55] We review the trial court's denial of a motion seeking separate trials of codefendants under the abuse of discretion standard. *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 421

24

N.E.2d 1288.   An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24*; *Wilmington Steel Products, Inc. v. Cleveland Elec. Illuminating Co. (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622.* When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181*, citing *Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301*.

[*P56] Crim.R. 13 provides that a court "may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information." Crim.R. 13 embodies the belief that joint trials "play a vital role in the criminal justice system" by conserving judicial resources, by promoting efficiency, and by serving "the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh (1987), 481 U.S. 200, 209-210, 107 S.Ct. 1702, 95 L. Ed. 2d 176.*   Accordingly, Ohio courts favor the joinder of defendants. *Torres at 343*; *State v. Thomas (1980), 61 Ohio St.2d 223, 225, 400 N.E.2d 401*.

[*P57] But the Rules of Criminal Procedure also recognize that a joint trial has the potential for prejudice to a defendant (or the State). Crim.R. 14 allows a court to order separate trials "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires." However, "[a] defendant claiming error in the trial court's refusal to allow separate trials of multiple charges" also "has the burden of affirmatively showing that his rights were prejudiced." *Torres at 343*.

B. Inconsistent Defenses

[*P58] Murphy first contends that he was prejudiced because his defense and that of Dixon were mutually antagonistic and irreconcilable. Various courts have described defenses as antagonistic "where each defendant is trying to exculpate himself and inculpate his co-defendant." [**25] *State v. Daniels (1993), 92 Ohio App.3d 473, 486, 636 N.E.2d 336*, citing *Romano v. State*

(Okla.Crim.App.1992), 1992 OK CR 11, 827 P.2d 1335; see, also, *State v. Kleekamp*, Montgomery App. No. 23533, 2010 Ohio 1906, at P103; *State v. Walters*, Franklin App. No. 06AP-693, 2007 Ohio 5554, at P23; *State v. Love, Mahoning* App. No. 02CA245, 2006 Ohio 1762, at P15. Antagonistic defenses between codefendants can be so prejudicial that they can deny a co-defendant a fair trial. Daniels at 486. In order to warrant severance, the defenses must be both irreconcilable and mutually exclusive. *State v. Bunch*, Mahoning App. No. 02CA196, 2005 Ohio 3309, at P43 (reversed in part on other grounds by *In re Ohio Criminal Sentencing Statute Cases*, 109 Ohio St.3d 313, 2006 Ohio 2109, 847 N.E.2d 1174, at P92), citing United *States v. Berkowitz* (C.A.5, 1981), 662 F.2d 1127, 1133. "The essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." Id.

[*P59] In his pre-trial motion for separate trials, Murphy informed the court that he intended to present an alibi defense and that he intended to produce other evidence that Dixon [**26] may have committed the criminal acts. Murphy also asserted that he learned through pre-trial conferences that Dixon intended to blame Murphy for the robbery. The State responded that severance was unwarranted and cited *Walters*, supra, for the proposition that shifting the blame to another co-defendant and exculpating oneself do not mandate separate trials.

[*P60] However, Walters is clearly distinguishable from the present case. The court of appeals held that one co-defendant's "defense of another" defense theory was not mutually antagonistic to the other co-defendant's "no causation defense." *Walters* at P36. That case involved a fight between the deceased victim and the two co-defendants. At trial, one co-defendant's defense was that he justifiably attacked the victim because he was defending the other co-defendant, i.e., defense of another. The other co-defendant claimed that whatever physical contact he had with the victim could not have caused the victims death, i.e., a "no-causation defense." The court explained that "defense of another" is a variation of self-defense. Self-defense "does not merely deny or contradict the evidence offered by the State, but rather admits the prohibited conduct while claiming that surrounding facts or circumstances justify the conduct." Id., quoting *State v. Brown*, Mahoning App. No. 03MA231, 2005 Ohio 4502, at P14. Thus, jurors could believe one co-defendant was justified in attacking the victim under a "defense of another theory" while simultaneously believing that the other co-defendant's physical contact did not ultimately cause the

26

death of the victim.

[*P61] In this case, Murphy supplied the court with sufficient information about mutually antagonistic defenses that should have led the court to consider whether prejudice would occur. If Murphy put forth evidence inculpating Dixon but also claimed he was not present at the crime scene, i.e., put forth an alibi defense, and Dixon were to argue that it was Murphy acting alone who committed the crime, the jury is undoubtedly faced with the situation where one or both co-defendants is lying.

[*P62] However, merely because co-defendants may assert incongruous defenses does not mean that a consolidated trial will compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. See *Zafiro v. United States* (1993), 506 U.S. 534, 113 S.Ct. 933, 122 L. Ed. 2d 317; *Walters* at PP24-25. [**28] Murphy had the burden of clearly demonstrating that he would be prejudiced or deprived of a specific trial right. The pre-trial motion, although providing the court with sufficient information to consider possible prejudice, did not clearly demonstrate a serious risk of loss of a specific trial right. And in its memorandum contra, the State indicated it intended to present evidence against both defendants.

[*P63] After considering what ultimately occurred at the trial, we are convinced that a consolidated trial did not prejudice Murphy's rights. Ultimately, Murphy presented an alibi defense but did not actively attempt to inculpate Dixon in the crime. His witnesses alleged that Dixon wanted him to go to Franklin Furnace but that he declined, staying with them. None of Murphy's witnesses testified that Dixon committed any crimes. Thus, although the two defenses were inconsistent, they were not mutually antagonistic.

[*P64] Furthermore, the State presented substantial incriminating evidence against both defendants. In other words, the State was not a passive participant, sitting by idly while Dixon or Murphy pointed the finger at one another and allowing the jury to conclude that one or both was lying. At least two witnesses positively identified Murphy in B+G prior to the incident. Waddell testified that Dixon was in the store and Murphy could not have left the store without him noticing. And the significant number of similarities between the Kentucky robbery and the B+G robbery led jurors to reasonably conclude that both men were involved. Accordingly, this argument is meritless.

*Ohio v. Murphy, supra.*

Murphy presents this claim as an abuse of discretion by the state court judge and argued it that way before the Court of Appeals.  But abuse of discretion is not a denial of due process *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

In arguing this claim, Murphy asserts that his Confrontation Clause rights were violated by the denial of separate trials.  That claim is dealt with under Ground Two where it is noted that Murphy was able to exercise his confrontation rights because Dixon did take the witness stand and was cross-examined.

Murphy also argues his privilege against self-incrimination was violated by the denial of separate trials because his co-defendant's counsel commented on his failure to testify (Response to Answer, Doc. No. 19, PageID 1807-1809).   However, this claim of prejudice arising from joint trial was never presented to the Ohio Court of Appeals (See Appellant's brief, Return of Writ, Doc. No. 18, PageID 1521-1525.)   On direct appeal Murphy claimed he and Dixon had inconsistent defenses, but the Court of Appeals found they were not because Murphy presented an alibi defense.   Any claim of prejudice from comments by co-defendant's counsel on Murphy's failure to testify, assuming they raise a constitutional claim, are waived by failure to present them on direct appeal.

Murphy has not shown that the Court of Appeals' decision on the joinder issue was contrary to or an unreasonable application of any Supreme Court precedent.  This ground for Relief should also be dismissed with prejudice.

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

June 19, 2012.

s/ **Michael R. Merz**<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).